# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

SARAH ANN LOSAPIO,                   :
Individually, and on behalf of a class    :
of all others similarly situated,         :
                                          :
    Plaintiffs,                     :      CIVIL ACTION NO.
                                          :      1:10-CV-3438-RWS
v.                                        :
                                          :
COMCAST CORPORATION,             :
COMCAST CABLE                         :
COMMUNICATIONS, LLC,                :
COMCAST CABLE                         :
COMMUNICATIONS HOLDING,          :
INC., COMCAST CABLE                 :
HOLDINGS, LLC, and COMCAST        :
CABLE COMMUNICATIONS             :
MANAGEMENT, LLC,                     :
                                          :
    Defendants.

## ORDER

    This case comes before the Court on Defendants Comcast Corporation,

Comcast Cable Communications, LLC, Comcast Cable Communications

Holding, Inc., Comcast Cable Holdings, LLC, and Comcast Cable

Communications Management, LLC's, (collectively, "Comcast") Motion to

Compel Arbitration and Stay Action [2], Motion for Hearing [14], Motion for

Extension of Time to Comply with Initial Discovery and Scheduling

Requirements [20], and Plaintiff, Sarah Ann Losapio's, Motion for Leave to

File Surreply [21]. After a review of the record, the Court issues the following

Order.

## Background

Comcast provides cable television, high-speed Internet, and other

services to its subscribers throughout the United States. (Def.'s Br., Dkt. [2], at

p. 2). Plaintiff is a Comcast High Speed Internet ("HSI") subscriber who alleges

that Comcast disclosed private data regarding its HSI subscribers to law

enforcement without the subscribers' knowledge or authorization in violation of

the compelled disclosure provisions of the Stored Communications Act, 18

U.S.C. § 2701 (the "SCA"), and the Wiretap Act, 18 U.S.C. § 2510 (the

"WTA"). (Id.).

Plaintiff became a cable television subscriber of Comcast's predecessor

in interest on or about September 22, 1994. (Id. at p. 3). Plaintiff began

receiving HSI service from Comcast in 2007 and, later that year, upgraded her

Comcast services to include Comcast Digital Voice ("CDV"). (Id.). As part of

the initial installation of the CDV service, Plaintiff received a Welcome Kit

containing the Comcast subscriber agreement and privacy notice. (<u>Id.</u>). Plaintiff also signed a work order on October 29, 2007 that stated "I acknowledge receipt of Comcast's Welcome Kit(s) which contain the Comcast subscriber agreement(s), the Comcast subscriber privacy notices and other important information about the service(s). I agree to be bound by the Comcast subscriber agreement(s) which constitute the agreement(s) between Comcast and me for the service(s)." (<u>Id.</u> at pp. 3 - 4).

In March 2008, Plaintiff was provided with the "Comcast Agreement for Residential Services" (the "Subscriber Agreement") that governs her relationship with Comcast. (<u>Id.</u> at p. 4). In order to disseminate its annual notices, Comcast includes the notices in the subscribers' monthly bills. (<u>Id.</u>). These bills are sent to current subscribers by first-class mail and include a return address in the upper left corner of the mailing. (<u>Id.</u>). The annual notice containing the Subscriber Agreement was mailed to Plaintiff as an insert to her March 9, 2008 bill, which she paid on March 27, 2008. (<u>Id.</u>). Section 1 of the Subscriber Agreement stated "you will have accepted this Agreement and be bound by its terms if you use the Services or otherwise indicate your affirmative acceptance of such services." (<u>Id.</u>).

AO 72A
(Rev.8/82)

The Subscriber Agreement contained a binding arbitration provision (the "Arbitration Provision"). (<u>Id.</u> at p. 5). The Arbitration Provision applies to "any dispute, claim, or controversy between you and Comcast regarding any aspect of your relationship with Comcast that has accrued or may hereafter accrue, whether based in contract, statute, regulation, ordinance, tort, . . , or any other legal or equitable theory." (<u>Id.</u>). The Arbitration Provision prohibits claims from being arbitrated on a class-wide basis. (<u>Id.</u> at p. 7). Moreover, the Arbitration Provision contained a jury-trial waiver, a waiver of certain damages, and a one-year-statute-of-limitations period. (Pl.'s Br., Dkt [5], at pp. 19-27).

Plaintiff could opt out of the Arbitration Provision by notifying Comcast in writing within 30 days of receiving the Subscriber Agreement or by visiting Comcast's website. (Def.'s Br, Dkt. [2],  at p. 6). Defendants filed their Motion to Compel Arbitration on October 29, 2010. (Pl.'s Br., Dkt. [5], at p. 10). Plaintiff reviewed the Subscriber Agreement on November 15, 2010 and opted out of the Arbitration Provision by visiting Comcast's website. (<u>Id.</u>). Plaintiff was notified that she had "opted out successfully." (<u>Id.</u>).

4

**Discussion**

## I.      Preliminary Matters

Defendants have requested a hearing on their Motion to Compel

Arbitration and to Stay Action [2] because the case involves numerous legal

issues of varying complexity. Because the Court finds the briefing on these

issues sufficient, the Request for Hearing [14] is **DENIED**.

## II.     Defendants Motion to Compel

The Federal Arbitration Act ("FAA") applies to any "written provision in

any . .  contract evidencing a transaction involving commerce." 9 U.S.C. § 2. It

further provides that "a written arbitration provision . . . shall be valid,

irrevocable, and enforceable, save upon such grounds as exist at law or in

equity for the revocation of any contract." <u>Id.</u> The effect of Section 2 of the

FAA is to "create a body of federal substantive law of arbitrability, applicable

to any arbitration agreement within the coverage of the Act." <u>Moses H. Cone</u>

<u>Mem'l Hosp. v. Mercury Constr. Corp.</u>, 460 U.S. 1, 23, 103 S.Ct. 927, 74

L.Ed.2d 765 (1983). Thus, a district court must compel arbitration and stay the

underlying action if the parties had an earlier agreement to arbitrate their

5

dispute. 9 U.S.C. § 3; see also Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218, 105 S.Ct. 1238, 84 L.E.2d 158 (1985).

Comcast has moved this Court to compel arbitration pursuant to the Arbitration Provision in Comcast's Subscriber Agreement. The written Arbitration Provision is a contract "evidencing a transaction involving commerce," and is therefore governed by the FAA. See 9 U.S.C. § 2. Moreover, the Arbitration Provision expressly states that the FAA "shall govern the arbitrability of all disputes." (Def.'s Br., Dkt [2], at p. 9).

The Arbitration Provision applies to any "dispute, claim or controversy between you and Comcast regarding any aspect of your relationship with Comcast." (Id. at p. 5). The allegation that Comcast disclosed private subscriber information obtained in the course of providing HSI services is related to Plaintiff's relationship with Comcast and is thus subject to arbitration under the terms of the Subscriber Agreement.

The FAA provides that, if a lawsuit in federal court has been brought "upon any issue referable to arbitration under an agreement in writing for such arbitration," the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of

the agreement." 9 U.S.C. § 3. Because this Court determines that the Arbitration

Provision is valid and enforceable, the parties should submit this dispute to

binding arbitration. As such, Defendants' Motion to Compel Arbitration and

Stay Proceedings [2] is **GRANTED**.

### III.    Plaintiff's Challenges to the Arbitration Agreement

   A.    <u>Defendants have not waived their right to compel</u>

   Plaintiff further claims that Defendants have waived the right to compel

arbitration because Comcast filed "its Notice of Removal instead of filing a

petition for arbitration or directly initiating arbitration." (Pl.'s Br., Dkt [5], at p.

41).  "[A]n agreement to arbitrate, 'just like any other contract . . , may be

waived.'" <u>Iva Corp v. B. Braun of American, Inc.</u>, 286 F.3d 1309, 1315 (11th

Cir. 2002) (<u>quoting</u> <u>Burton-Dixie Corp v. Timothy McCarthy Const. Co</u>, 436

F.2d 405, 407 (5th Cir. 1971)). However, despite Plaintiff's contention,

removing a case to federal court does not waive the right to arbitrate the

dispute. <u>See</u> <u>Lawrence v. Household Ban</u>, 343 F. Supp. 2d 1101, 1113 (M.D.

Ala. 2004) (arbitration not waived where defendants "moved to compel

arbitration shortly after removing [their] case to federal court and before any

7

litigation activity occurred"). Therefore, Defendants were free to raise their

Motion to Compel upon removing the action to this Court.

      B.    <u>Plaintiff received the Arbitration Provision</u>

      Plaintiff asserts that Comcast provided no evidence demonstrating that

she received the Subscriber Agreement containing the Arbitration Provision.

(Pl.'s Br., Dkt [5], at p. 7). Because she never received the Arbitration

Provision, she claims that she cannot be compelled to submit her claims to

binding arbitration. (<u>Id.</u> at pp. 7-8). However, Plaintiff's assertion that she did

not receive the provision, without more, is insufficient to demonstrate that she

is not bound by the Arbitration Provision.

      According to Comcast's sworn Declaration, Comcast distributed the

Subscriber Agreement as an insert to Plaintiff's bill in March 2008.[1] (Dec. of

Mary Kay Schultz, Dkt. [2-1], at ¶¶ 10, 12). Where, as here, there is proof

---

[1] Plaintiff argues that Defendants "has not and cannot lay sufficient foundation" for the letter from Comcast's billing service confirming the insertion of the Subscriber Agreement in Plaintiff's March 2008 bill. (Pl.'s Br, Dkt. [5], at pp. 4-5). However, the Schultz declaration is adequate evidence of Comcast's routine business practice, because it is based upon records made by Comcast and its billing vendor in the regular course of business. <u>See</u> <u>United States v. Parker,</u> 749 F.2d 628, 633 (11th Cir. 1984) (testimony of a company executive sufficiently "support[ed] the trustworthiness" of a customs certificate received by the company where neither the company nor the witness had "prepared the certificate" or "had first-hand knowledge of [its] preparation.")

establishing that a document was addressed and mailed, a presumption of receipt arises and that presumption cannot be rebutted by a bare denial. See Barnett v. Okkeechobee Hosp., 283 F.3d 1232, 1240-41 (11th Cir. 2002). Comcast demonstrated that Plaintiff received the Arbitration Provision in her March 9, 2008 bill, which she paid in full.  Under the reasoning of Barnett, Plaintiff's bare denial of receipt is insufficient to rebut the presumption that she received the clause and is bound by its terms. See also Athon v. Direct Merch. Bank, 2007 WL 1100477, at *3-4 (M.D. Ga. Apr. 11, 2007) (where credit card holder was mailed an arbitration agreement at his billing address, and he paid those bills, the card holder's denial that he received the arbitration agreement did not rebut the presumption of receipt, and he was bound by the arbitration agreement).

Moreover, valid contracts, including contracts containing arbitration clauses, may be formed by a party's continued use or acceptance of services without objection. See Honig v. Comcast of Ga. I, LLC, 537 F. Supp. 2d 1277, 1283-84 (N.D. Ga. 2008) (citing Comvest, LLC. v. Corp. Sec. Group, Inc., 507 S.E.2d 21, 24-25 (Ga. App. 1998)). Therefore, Plaintiff's acceptance of Comcast's cable services, demonstrated by the payment of her bills, without

9

objection bound her to the terms of the Subscriber Agreement, including the

Arbitration Provision.

C.    <u>Plaintiff did not timely opt out of the Arbitration Provision</u>

Plaintiff also asserts that she opted out of the Arbitration Provision on

Comcast's website on November 15, 2010 and therefore she does not have to

submit her claims to arbitration. (Pl.'s Br., Dkt [5], at pp. 14-17). The

Arbitration Provision provides that the deadline for opting out of the arbitration

agreement is within 30 days of the date that the subscriber first receives the

agreement. (Def.'s Br, Dkt. [5], at p. 6). Plaintiff claims that she first received

the agreement on November 10, 2010, and timely opted out of the provision

five days later, which falls within the 30 day opt-out deadline required by the

Arbitration Provision. Although Plaintiff is correct that she opted out in

November 2010, her opt out was untimely.  At a minimum, Plaintiff  received

the Arbitration Provision by March of 2008. Therefore, opting out in November

2010, over two years after initially receiving the Subscriber Agreement, falls

outside the 30 day opt out deadline proscribed by the Arbitration Provision.

Plaintiff is thus bound by the arbitration agreement.

D.    The Arbitration agreement is valid and enforceable

Even if Plaintiff agreed to arbitrate the claims and failed to timely opt-out of the arbitration agreement, she asserts that the Arbitration Provision is unenforceable. The FAA provides that an agreement to arbitrate is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Plaintiff points to several provisions in the arbitration agreement that purportedly render it unenforceable. These provisions include: the jury-trial waiver provision, the class-action waiver provision, the waiver of certain damages, and the one year statute of limitations period. Because this Court concludes that these specific provisions are valid under the facts of this case, the Arbitration Provision is enforceable.

1.    **Jury Trial Waiver**

Plaintiff argues that the jury-trial waiver is invalid because Georgia law does not enforce such pre-litigation contractual waivers of the right to a jury trial. (Pl.'s Br., Dkt. [5], at pp. 19-20). However, in electing arbitration, the parties can agree to waive certain constitutional and procedural rights to which they would be entitled in a judicial forum, including the right to trial by jury.

11

See Greene v. Hundley, 468 S.E.2d 350, 352-53 (Ga. 1996).  Therefore, the

jury-trial waiver in the Arbitration Provision is enforceable.

## 2.    Class-action waiver

Plaintiff also claims that the class-action waiver provision in the

Arbitration Provision is unenforceable. (Pl.'s Br., Dkt. [5], at pp. 20-24).

According to Plaintiff, "the mere prospect of recovering attorney's fees is

inadequate to provide an incentive sufficient to hire counsel to pursue an

individual arbitration for claims under the SCA or WTA." (Id. at 21). As such,

Plaintiff argues that if the class action waiver is enforced, she and members of

the proposed class will be denied meaningful relief.

To advance her argument, Plaintiff relies on the Eleventh Circuit's

decision in Dale v. Comcast Corp., 498 F.3d 1216 (11th Cir. 2007). In Dale, the

Eleventh Circuit held that a class action waiver provision was unenforceable

because "without the benefit of a class-action mechanism, the subscribers

would effectively be precluded from suing Comcast for a violation of [the Cable

Act] because of the difficulty a single subscriber would have in obtaining legal

representation in light of the small amount of damages at issue and the Cable

Act's lack of a fee-shifting provision." Dale, 498 F.3d at 1224.

12

Although <u>Dale</u> appears to support Plaintiff's position, the decision did not categorically hold that all class action waivers in arbitration agreements are unenforceable. <u>Honig v. Comcast of Ga. I, LLC</u>, 537 F. Supp. 2d 1277, 1286 (N.D. Ga. 2008). "Rather, the Eleventh Circuit made clear that whether a class action waiver is enforceable depends entirely upon the unique facts and circumstances of the case." <u>Id.</u>  In <u>Dale</u>, the plaintiffs were not entitled to attorney's fees under their primary claim. In light of the lack of a fee shifting provision, the Eleventh Circuit expressed concern that enforcement of the class-action waiver would contravene public policy because there would be little or no incentive for a lawyer to bring an individual subscriber's claims in light of the small amount of damages each subscriber sought. <u>Id.</u> at 1287.

The concerns expressed by the Eleventh Circuit in <u>Dale</u> are not present in this case because, as Plaintiff has conceded, both the SCA and the WTA allow discretionary attorneys fees. (Pl.'s Br., Dkt [5], at p.21). The <u>Dale</u> court noted that  class action waivers have been upheld in cases like this one where the statutes under which the plaintiffs are suing allow for an automatic or likely recovery of attorney's fees. <u>See</u> <u>Dale</u>, 498 F.3d at 122 (discussing <u>Caley v. Gulfstream Aerospace Corp.</u>, 428 F.3d 1359 (11th Cir. 2005); <u>Jenkins v. First</u>

Am. Cash Advance of Ga., LLC,400 F.3d 868 (11th Cir. 2005); Randolph v.

Green Tree Fin. Corp.-Ala., 244 F.3d 814 (11th Cir. 2005)); see also Cappucitti

v. DirecTV, Inc., 623 F.3d 1118 (11th Cir. 2010) (stating plaintiffs' theoretical

ability to bring a claim under a fee-shifting statute is sufficient for a class-action

waiver to be enforceable). Here, Plaintiff's primary claims entitle her to recover

attorneys' fees should the court determine that they are appropriate. As a result,

the class-action waiver provision is enforceable.

### 3.    **Waiver of damages**

Plaintiff next asserts that the clause in the Arbitration Provision

prohibiting "indirect, consequential, punitive, exemplary or multiplied

damages" renders the agreement unenforceable. (Pl.'s Br., Dkt. [5], at pp. 24-

25). However, the Arbitration Provision does not prohibit such damages if "the

statute under which [a party is] suing provides otherwise."  Because the SCA

and WTA allow for punitive damages where a violation is willful or intentional,

these damages are available to Plaintiff under the Arbitration Provision. See 18

U.S.C. § 2707 (c); 18 U.S.C. § 2520(b). Accordingly, the Arbitration Provision

does not preclude Plaintiff's ability to vindicate her statutory rights under the

SCA or WTA.

14

### 4.      One-year statute of limitations

Plaintiff also argues that the requirement that she contact Comcast "within one (1) year of the date of the occurrence of the event . . . giving rise to a dispute" is unenforceable because it is contrary to the two-year limitations period contained in the SCA and WTA. (Pl.'s Br., Dkt. [5], at p. 26). Plaintiff relies on <u>Jackson v. Cintas Corp</u>., 425 F.3d 1313 (11th Cir. 2005) for the proposition that a one-year limitations period contained in an arbitration provision that was less than the period provided for under a federal statute is substantively unconscionable and invalid. (Pl.'s Br, Dkt [5], at p. 26). Although the Eleventh Circuit did find a one-year limitations period unconscionable, the plaintiff in <u>Jackson</u>, unlike Plaintiff in this case, did not have the ability to opt-out of the agreement. Moreover, an almost identical arbitration agreement, containing the same one-year notice provision, was upheld in <u>Honig</u> where the plaintiff had the ability to opt-out. 537 F. Supp. 2d at 1290 (holding that the Arbitration Provision contained in Comcast's Subscriber Agreement was enforceable). As such, Plaintiff cannot assert that the one-year notice provision alone renders the Arbitration Provision unenforceable.

15

E.      The arbitration agreement is not unconscionable

Plaintiff asserts that the Arbitration Provision is unconscionable and therefore cannot be enforced. (Pl.'s Br., Dkt. [5], at pp. 27-35). Plaintiff specifically argues that the Arbitration Provision excludes from arbitration any claims Comcast would likely bring, and that the arbitration agreement impermissibly shifts fees.  According to Plaintiff, these provisions, taken together, illustrate that the agreement was one-sided and substantively unconscionable.

For a contract to be unconscionable under Georgia law, there must generally be both procedural and substantive unconscionability. See NEC Techs., Inc. v. Nelson, 478 S.E.2d 769, 773 n.6 (Ga. 1996) ("[T]o tip the scales in favor of unconscionability, most courts seem to require a certain quantum of procedural plus a certain quantum of substantive unconscionability"). Unconscionability requires both "an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." Gordon v. Crown Cent. Petroleum Corp., 423 F. Supp. 58, 61 (N.D. Ga. 1976). However, Plaintiff failed to demonstrate how this agreement was procedurally unconscionable.

16

Moreover, the Arbitration Provision is enforceable because Plaintiff could have properly opted out of the arbitration clause's provisions. The <u>Honig</u> court, in upholding a nearly identical arbitration provision, noted that the plaintiff was "free to reject the terms of the arbitration provision without a single adverse consequence." <u>Honig</u>, 537 F. Supp. 2d at 1289. Like the plaintiff <u>Honig</u>, Plaintiff here was given the right to opt out of the agreement within thirty days without adversely affecting her cable service. However, she failed to timely exercise this right. Plaintiff's ability to opt out of the arbitration provision dilutes her unconscionability argument because the provision was not offered on a take-it-or-leave-it basis. <u>Id.</u> Courts have stressed the importance of opt-out provisions when concluding that arbitration agreements are enforceable. <u>See, e.g.</u>, <u>Davidson v. Cannular Wireless, LLC</u>, No. 2:06-CV-00133, 2007 WL 896349, at *6 (E.D. Ark. Mar. 23, 2007). Because Plaintiff had the opportunity to opt out, the Arbitration Provision cannot be considered unconscionable.

## IV.     Motion for Surreply

Plaintiff requests leave to file a Surreply in Opposition to Defendants' Motion to Compel Arbitration and Stay Action [21]. According to Plaintiff, the surreply would address new legal arguments and changes in Defendants' factual

assertions that were raised for the first time in Defendants' Reply Memorandum

of Law in support of their Motion to Compel Arbitration and Stay Action [13].

Although the N.D. Ga. Local Rules do not permit surreplies as a matter of

course, Plaintiff alleges that a surreply is necessary under the facts of this case

because Defendants should not be permitted to make new factual assertions for

the first time in their Reply. According to Plaintiff, Defendants' new factual

allegations include "Defendant's representation that it is not relying on any

Subscriber Agreement subsequent to the 2008 Agreement, although in its initial

brief, it claimed that the 2010 Work Order constituted Mr. Losapio's agreement

to the terms then in existence." In addition, for the first time in their Reply brief,

Defendants acknowledged that Plaintiff did not receive notice of the present

Subscriber Agreement prior to October 29, 2010. Despite Plaintiff's contention,

this Court concludes that a surreply is unnecessary because the facts raised in

Defendants' Reply are not new and therefore Plaintiff already had the

opportunity to reply to them. As such, Plaintiff's Motion for Leave to File

Surreply [21] is **DENIED**.

Despite denying Plaintiff's motion, the Court has reviewed Plaintiff's

surreply and does not find merit in the arguments. Plaintiff points to a footnote

AO 72A
(Rev.8/82)

in which Defendants asserted that the 2008 Subscriber Agreement was the version in effect at the time the disclosures at issue in this case were made. (Def.'s Rep. Br., Dkt [13], at p. 15 n. 7). However, according to Plaintiff, the Subscriber Agreement that Plaintiff received in 2008 has since been amended and Defendants agreed that the current Subscriber Agreement would replace the prior Subscriber Agreement. (Id. at p. 13). Plaintiff therefore asserts that she timely opted out of the Arbitration Agreement upon viewing the amended Agreement on Comcast's website and thus cannot be subject to arbitration. (Id. a pp. 14 - 15).

Although Plaintiff may have opted out of the amended Arbitration Agreement in a timely fashion, Plaintiff did not opt out prior to the time the suit was filed. The Eleventh Circuit treats issues involving arbitration clauses as questions of venue. See Fed.R.Civ.P. 12(b)(3); Lipcon v. Underwriters at Lloyd's, London, 148 F.3d 1285, 1290 (11th Cir.1998). And, questions of venue must be determined based on the facts at the time of filing. See Flowers Indus., Inc. v. F.T.C., 835 F.2d 775, n.1 (11th Cir. 1987). At the time of filing, Plaintiff had not opted out of either the 2008 Subscriber Agreement or the amended 2010 version. As a result, Plaintiff is bound by the arbitration clause.

19

## V.      Remaining Motions

Defendants have filed a Motion for Extension of Time to Comply with

Initial Discovery and Scheduling Requirements [20] requesting the Court to

extend the time within which Comcast may serve its Initial Disclosures until

after this court resolves the Motion to Compel Arbitration [2]. Because the

Court has granted the Motion to Compel and Stay Action, Defendants' Motion

to extend the time is **MOOT.**

## CONCLUSION

This Court finds that the Plaintiff received the Subscriber Agreement and

is bound by the terms of the Arbitration provision. Moreover, the Arbitration

Provision is valid and enforceable. As a result, Defendants' Motion to Compel

Arbitration and Stay Action [2] is **GRANTED**. Because the Court finds the

briefing on these issues to be sufficient, Defendants' Request for Hearing [14]

is **DENIED**. Moreover, as Defendants Reply Brief does not introduce new

facts, Plaintiff's Motion for Leave to File Surreply [21] is also **DENIED**.

Defendants' Motion for Extension of Time to Comply with Initial Discovery

and Scheduling Requirements [20] is rendered **MOOT**.

20

Plaintiff is **ORDERED** to submit her individual claims to binding arbitration.  This action is **STAYED** pending arbitration.

**SO ORDERED**, this  18th  day of April, 2011.


RICHARD W. STORY
UNITED STATES DISTRICT JUDGE

21